**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>   Plaintiff, )<br>)<br>v.   )<br>)<br>TEDI HAWKINS, )<br>)<br>   Defendant. )<br>)<br>) | NO. 5:23-CR-00140-DCR-MAS-2 |

**DETENTION OPINION & ORDER**

Defendant Tedi Hawkins ("Hawkins") was indicted on one count of conspiracy to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 846. [DE 10 (Indictment)]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(C). After considering the record—including testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Hawkins pending trial.

**I.   FACTUAL AND PROCEDURAL HISTORY**

The Pretrial Services Report ("PSR") sheds light on Hawkins' background and criminal history. She has spent most of her life in Lexington, Kentucky, with a brief period in Detroit, Michigan, during her adolescence. Before her arrest, Hawkins lived with her mother, Saleemah Gashaw ("Gashaw"), in Georgetown, Kentucky. She has close connections with her family, including her siblings and mother. The PSR

1

indicates that Hawkins has had an "off-and-on" relationship with Eugene Fishback ("Fishback"), her co-defendant in this case.

Hawkins' criminal history initially consisted mainly of traffic violations. However, her record took a serious turn in July 2021, when she was charged with trafficking fentanyl and cocaine. This case is still active in Fayette Circuit Court. Drug Enforcement Administration ("DEA") Special Agent Jason Moore ("SA Moore") testified as to his knowledge of the July 2021 charge, stating that it resulted from a search by the Lexington Police Department ("LPD"). Evidently, in the course of investigating a homicide, LPD executed a search at Fishback's residence. Fishback and Hawkins were present during the search, during which LPD found a safe. Hawkins had the key to the safe on her person. Inside the safe, LPD discovered suspected controlled substances.

SA Moore also testified about the current federal charge against Hawkins. He noted that Hawkins was Fishback's frequent companion and that law enforcement observed them conducting drug transactions together. On December 6, 2023, federal agents executed a search warrant at the Raintree Apartment complex. Hawkins had a key to this residence and admitted to law enforcement that she lived there. During the search, agents found packaged marijuana, scales, and plastic bags. These bags, together, contained around 200 suspected fentanyl pills. The pills were blue with "M" and "30" markings.

In his testimony, SA Moore connected these pills to Fishback's larger drug operation. In October 2023, a search at the Stoney Brook apartment complex (which

2

neighbors the Raintree Apartment complex) led to the seizure of 1.6 pounds of fentanyl. Photographs and mail matter suggested that Fishback and Hawkins lived at this apartment. On the same day as the Raintree Apartment search on December 6, 2023, agents searched Fishback's vehicle. They found several hundred suspected fentanyl pills, matching those from the apartment. Following the search, a federal grand jury indicted Fishback and Hawkins, and an arrest warrant was issued. Hawkins ultimately turned herself into SA Moore.

## II. LEGAL FRAMEWORK

Given the charges, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") regarding both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A). Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and

convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with the conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.[1]

---

[1] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

4

### III. ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Hawkins has overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

#### A. RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Hawkins overcame the presumption of detention regarding her risk of nonappearance. Her mother, Gashaw, testified that Hawkins lived with her before the arrest and would continue to do so if released. Gashaw's provision of potential employment for Hawkins at her workplace

---

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

aimed to mitigate the risk further. These assurances appeared to meet the "burden of production" to counter the presumption of detention. *Stone*, 608 F.3d at 945.

The Court considers, however, Hawkins' history of failing to appear in other court proceedings. For instance, September 2023, a warrant was issued in Scott County due to her failure to appear at a hearing related to charges of careless driving and operating a vehicle under the influence of drugs or alcohol. In Knox County, Hawkins likewise failed to appear for an arraignment on May 1, 2023 on charges of speeding and reckless driving. Courts do not always weigh failure to appear for hearings related to traffic offenses heavily in favor of detention. *See United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment."). However, Hawkins' traffic-related offenses, including reckless driving and driving under the influence of alcohol or drugs, are more severe than mere speeding or failure to maintain an operator's license. Given the gravity of these offenses, the Court views her history of failing to comply with court obligations, especially these serious traffic offenses, as weighing in favor of detention.

During the detention hearing, the United States also raised doubts about the credibility of Gashaw's testimony, particularly concerning Hawkins' living situation before her arrest. Gashaw conceded that Hawkins only intermittently resided with her, spending roughly 3–4 nights a week at her home and the rest with other family

6

members. Gashaw also claimed that Fishback was her daughter's *ex*-boyfriend and that they no longer had any association. Contrarily, the United States posited that Hawkins might have been living with Fishback.

While the United States did not provide specific evidence or testimony confirming Hawkins' exact whereabouts before entering federal custody, Gashaw's statements significantly diminished her trustworthiness. Gashaw admitted to facilitating communication between Hawkins and Fishback after their arrests by arranging a three-way call. This action substantially erodes the Court's confidence in Gashaw as a potential mitigating influence on Hawkins' risk of nonappearance or a guarantor of her compliance with court orders. It portrays Gashaw not as a stabilizing force but as someone who may inadvertently or deliberately facilitate Hawkins' noncompliance or evasion of legal responsibilities.

Considering these factors, the Court concludes that the government has sufficiently demonstrated by preponderant evidence that Hawkins is at risk of nonappearance. The Court finds it impracticable to devise conditions that would adequately mitigate the risk of her nonappearance since condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance"); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition

7

combination necessarily "hinge[s] on [the defendant's] good faith compliance"). Hawkins' history of noncompliance, including being under federal indictment while on bond for state charges, is a strong predictor for noncompliance with pretrial release conditions. Thus, the Court finds no conditions to mitigate Hawkins' nonappearance risk.

**B.     DANGER TO THE COMMUNITY**

Though it has already determined that pretrial detention is appropriate due to Hawkins' risk of nonappearance, the Court examines the danger-based detention for thoroughness. First, the Court finds that Hawkins has satisfied her burden of production with respect to overcoming the presumption of detention as it relates to danger, based on testimony offered by Gashaw that she would ensure Hawkins' compliance with the terms of pretrial release and monitor her at home and work. Despite overcoming the presumption, the Court concludes that the United States has demonstrated by clear and convincing evidence that Hawkins poses a significant danger to the community.

### 1.     Nature and Circumstances of the Offense

In assessing "the nature and circumstances of the offense charged" as mandated by 18 U.S.C. § 3142(g)(1), the Court notes that Hawkins faces a serious drug-related conspiracy charge. [DE 10]. Specifically, Hawkins has been charged with conspiracy to distribute fentanyl. Drug distribution, especially of substances as potent and dangerous as fentanyl, is a particular risk danger to society under the BRA. *United States v. Hare*, 873 F.2d 796, 798–99 (5th Cir. 1989); *see also United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13,

2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention where "they ar[o]se in the context of a large drug trafficking scheme"). Here, testimony and proffer all indicate that Hawkins played an important role in the conspiracy. While Hawkins' attorney, by proffer, sought to downplay her involvement in the conspiracy, the evidence offered at the detention hearing suggests otherwise. SA Moore testified that surveillance showed that Hawkins was an active participant with Fishback during drug transactions. Also, SA Moore testified that Hawkins had a key on her person that unlocked a safe containing controlled substances. These circumstances suggest that her involvement in the alleged conspiracy was not negligible. In sum, this factor weighs in favor of detention.

### 2. Weight of the Dangerousness Evidence

Next, the Court evaluates "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). This consideration pertains to the evidence of dangerousness, not guilt. For the reasons discussed above, the Court finds that the evidence of dangerousness weighs heavily in favor of detention. Hawkins is alleged to have conspired with Fishback while operating a drug trafficking network from various residences they occupied. Central to this operation is the trafficking of fentanyl, a substance notoriously linked to a high number of near-fatal overdoses and posing a significant threat to community safety. *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948).

The Court is particularly concerned about the specific type of fentanyl involved in this case. SA Moore highlighted the alarming potency of this fentanyl—estimated

9

to be 50 times stronger than pharmaceutical-grade oxycodone. Coupled with its potency, the fentanyl is in pill form, bearing "M" and "30" markings, consistent with the appearance of oxycodone pills. Thus, the gravity of danger intensifies due to the deceptive manner in which this fentanyl is presented: it is pressed, dyed, and stamped to resemble oxycodone. According to SA Moore, this deception significantly increases the risk of overdoses, as individuals using the substance might be under the mistaken belief that they are using a far less potent drug. The resultant increase in overdoses and consequent fatalities within the community cannot be overstated. The Court, therefore, finds that the dangerousness associated with the trafficking charges significantly weighs in favor of detention under the BRA.

### 3.     History and Characteristics

Under the framework of 18 U.S.C. § 3142(g)(3), the Court conducts a thorough evaluation of Hawkins' history and characteristics, considering her physical and mental health, family connections, employment, extensive criminal record, and history of substance use. Considering all the evidence presented, this factor weighs in favor of detention.

Hawkins did not report a substance use disorder. However, as noted in the PSR, she admitted to consuming alcohol daily and using cannabinoids weekly since the age of 14. Testimony from her mother and proffer indicate strong familial connections, particularly with her mother and at least one sibling. Yet, these apparent bonds do not alleviate the Court's concerns regarding her criminal history.

It is particularly troubling that the behavior leading to the federal indictment occurred while Hawkins was out on state bond for charges of similar gravity.

Moreover, the Court finds it alarming that even after her indictment, Hawkins involved her mother in maintaining communication with Fishback, her co-defendant. This involvement suggests that her close family ties are not a restraining influence and do not appear to deter her from participating in drug trafficking activities. In light of these considerations, the Court concludes that while her individual characteristics might not indicate a danger to the community, her actions and conduct strongly suggest otherwise. Her propensity to reengage in drug trafficking upon release is a significant concern, indicating a potential threat to community safety. This factor weighs in favor of detention.

### 4. Nature and Seriousness of the Danger Risk

Finally, under 18 U.S.C. § 3142(g)(4), the Court considers "the nature and seriousness of the danger to any person or the community." As SA Moore testified, law enforcement has recovered hundreds of fentanyl and suspected fentanyl pills in the course of its investigation, including in places in which Hawkins resided and in the car of her alleged co-conspirator. Even more alarming, as discussed above, is that these pills are disguised to look like pharmaceutical-grade oxycodone. Trafficking fentanyl by itself poses a danger, but the risk is exponential when the drug is intentionally designed to appear like far less potent substance, leading to fatal or near-fatal overdoses. This factor weighs heavily in favor of detention.

11

The Court finds that Hawkins presents a danger to the community that cannot be mitigated by conditions this Court can impose. *See, e.g., United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home). Accordingly, the BRA requires that Hawkins be detained pending trial based on her potential danger to the community.

## IV.  CONCLUSION

Ultimately, the Court finds that the United States proved by a preponderance of the evidence that no conditions could ensure Hawkins' future appearance at Court proceedings. Separate and apart from Hawkins' risk of nonappearance, the Court finds that the Government has shown—by clear and convincing evidence—that no condition or combination of conditions could reasonably assure community safety. Accordingly, the Court **GRANTS** the United States' oral detention motion. As the BRA mandates in this case, Hawkins shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 9th of January, 2024.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY